## S13A0067. SHERMAN et al. v. CITY OF ATLANTA et al.
(744 SE2d 689)

NAHMIAS, Justice.

Appellants John S. Sherman and Christopher D. Eichler filed a notice of appeal from the trial court's judgment confirming and validating a bond issuance by the City of Atlanta. See generally OCGA §§ 36-82-60 to 36-82-85 (the "Revenue Bond Law"). However, at the bond validation hearing, the City disputed Appellants' standing to become parties and raise objections in this case, and no competent evidence was admitted to show that either Appellant was a Georgia citizen and Atlanta resident, which were the prerequisites to becoming a party under the Revenue Bond Law. See OCGA § 36-82-77 (a) ("Any citizen of this state who is a resident of the governmental body which desires to issue such bonds may become a party to the proceedings at or before the time set for the hearing . . . ."). Thus, Appellants failed to prove that they had standing to become parties, and the trial court should have dismissed their objections instead of rejecting those claims on the merits. And because Appellants lacked standing to become parties in the trial court, they also lack standing to appeal the trial court's judgment. See id. ("Only a party to the proceedings at the time the judgment appealed from is rendered may appeal from such judgment.") Accordingly, we must dismiss this appeal.

1. On April 20, 2012, pursuant to OCGA § 36-82-75, the State of Georgia, through the District Attorney for Fulton County, petitioned

the Fulton County Superior Court for a judgment confirming and validating the issuance by the City of Atlanta of up to $35 million in bonds secured by the tax allocation increments for the Perry-Bolton Tax Allocation District ("Perry-Bolton TAD"). See generally *Sherman v. Atlanta Independent School System* ("*Sherman I*"), 293 Ga. 268, (744 SE2d 26) (2013) (discussing the history of TAD financing in Georgia and the Perry-Bolton TAD in particular). The petition named as defendants the government entities whose tax revenues would be included in the tax allocation increments: the City, Fulton County, and the Atlanta Independent School System (collectively, "Appellees").

The trial court scheduled a bond validation hearing for May 8, 2012, and notice of the hearing was given to the public. See OCGA § 36-82-76. A bond validation hearing is an evidentiary hearing at which "the judge of the superior court shall proceed to hear and determine all questions of law and of fact in the case and shall render judgment thereof." OCGA § 36-82-77 (a).

Just before the hearing started, counsel for Appellants John S. Sherman and Christopher D. Eichler filed and served on the parties a document entitled "Objections to Bond Validation and Denial of Bond Validation Petition Allegations" ("Objection"). The Objection, which was verified by Eichler, alleged that Appellants were Georgia citizens and City residents and as such had the right under OCGA § 36-82-77 (a) to become parties to the proceeding and file objections to the bond issuance. Appellants did not attend the hearing. Instead, their attorneys, John F. Woodham and Irwin W. Stolz, Jr., appeared on their behalf.

Near the beginning of the hearing, counsel for the City protested that Appellants could not intervene and file objections until they proved, through witnesses or other admissible evidence, that they were City residents. In response, Woodham suggested that Appellees concede that at least Sherman was a City resident, but Appellees did not do so. Woodham also said he could "state in my place" as an officer of the court that Appellants were Atlanta residents, but the court responded, "this is the hearing, so it would require evidence to be presented," and specifically advised Woodham that his statements-in-place regarding his clients' residency were "not going to be good enough." Woodham pointed to the Objection's residency allegations and asserted that Eichler's verification of the Objection was based on personal knowledge. But Appellees and the court noted that Eichler was not present at the hearing to be cross-examined, and the court added, "because a complaint is verified doesn't mean that when you actually have a trial or a hearing, witnesses [don't] still have to come and testify." The court reserved ruling on the standing issue to allow

the record to be developed during the hearing. The court also mentioned the possibility of a continuance, but Appellants did not seek one at that time.[1]

The court then directed Appellees to begin their presentation on the merits of the bond validation. After making their arguments, Appellees called Sherman and Eichler "for cross-examination," but neither man was present in the courtroom. At the close of Appellees' case-in-chief, the court emphasized that Appellants were the masters of their own case, saying to their counsel:

> It is your case . . . Mr. Woodham, we are at an evidentiary hearing . . . . You got the floor. You call whoever you want to or present whatever you want to present. . . . It's your case. So, if you want to call somebody, go ahead and do that. If they are not here they are not here. And we will keep moving. . . . I am going to let the parties present whatever they want to present to the court. And I will consider whatever is legally appropriate to consider in making a determination.

Counsel for Appellants then presented argument about the standing and bond validation issues, but offered no documents into evidence and presented no witnesses to testify about Appellants' current citizenship and residency. At the end of the hearing, the court requested post-hearing briefs on the substantive arguments raised in the Objection, but made it clear that the evidence was closed and would not be re-opened. The parties filed their post-hearing briefs, and the City also filed a formal motion to dismiss the Objection for lack of standing based on the absence in the record of any evidence that Appellants were City residents.

On May 23, 2012, the trial court entered a judgment confirming and validating the proposed bond issuance. Toward the end of its detailed order, the court noted that Appellants had filed the Objection, that neither Sherman nor Eichler was present at the bond validation hearing, and that Appellees had "raised the issue of whether the Objection could be heard if [Appellants] were not present to show that they were citizens of this State as required by OCGA § 36-82-77 (a)." However, the court ruled that it was "not necessary to reach this question" because of the court's decision to "overrule[ ], den[y] and dismiss[ ] each of the objections to the [bond] validation" on the merits. Appellants filed a timely notice of appeal.

---

[1] The court had previously denied Woodham's request for a continuance for a different reason.

On December 20, 2012, this Court directed the parties to be prepared to address at oral argument

> whether the appellants proved in the trial court that they were citizens of this state and residents of the governmental body which desires to issue the bonds, as required to become a party under OCGA § 36-82-77 (a), and, if not, whether the appellants are authorized to bring this appeal.

We authorized additional briefing on these issues, and the parties filed supplemental briefs. The appeal was orally argued on January 7, 2013.

2. Although the trial court recognized that Appellees had raised the issue of Appellants' standing under the Revenue Bond Law to become parties to the bond validation proceeding, the court deemed it unnecessary to decide that issue due to its conclusion that Appellants' objections to the bond validation were unpersuasive on the merits. However, standing is "[i]n essence the question of . . . whether the litigant is entitled to have the court decide the merits of the dispute *or of particular issues,*" *Warth v. Seldin,* 422 U. S. 490, 498 (95 SCt 2197, 45 LE2d 343) (1975) (emphasis added), and litigants must establish their standing to raise issues before they are entitled to have a court adjudicate those issues, see *Dept. of Human Resources v. Allison,* 276 Ga. 175, 178 (575 SE2d 876) (2003). Thus, the trial court should not have addressed the merits of the Objection without first determining whether Appellants had established standing to raise those objections. And because the Revenue Bond Law makes Appellants' Georgia citizenship and Atlanta residency the requirements both for becoming parties in the trial court and for appealing the trial court's judgment, it is to that question that we now turn.

3. The Revenue Bond Law includes a broad, but not unlimited, citizen-standing provision. OCGA § 36-82-77 (a) states, in pertinent part:

> . . . Any *citizen of this state* who is a *resident of the governmental body* which desires to issue such bonds may become a party to the proceedings at or before the time set for the hearing and any party thereto who is dissatisfied with the judgment of the court confirming and validating the issuance of the bonds or refusing to confirm and validate the issuance of the bonds and the security therefor may appeal from the judgment under the procedure provided by law in

cases of injunction. Only a party to the proceedings at the time the judgment appealed from is rendered may appeal from such judgment.

(Emphasis added.)

Thus, Appellants' standing to participate in the bond validation proceeding under OCGA § 36-82-77 (a) was contingent on their proving that they were Georgia citizens and City of Atlanta residents. See *Allison*, 276 Ga. at 178 (holding that where standing is disputed, the litigant claiming standing has the burden of proving it). As discussed previously, neither Sherman nor Eichler attended the bond validation hearing, and their attorneys did not offer any evidence on the standing issue. Appellants did not introduce, much less have admitted into evidence, any document, nor did they present any witness, to try to establish their current State citizenship and City residency. Indeed, one searches the record in vain to find so much as a street address for Sherman or Eichler. There is simply no evidence in the record that either man was a Georgia citizen or a City resident at the time the Objection was filed on May 8, 2012. Appellants therefore failed to carry their burden of proving their standing to become parties under OCGA § 36-82-77 (a), and the trial court should have dismissed the Objection instead of addressing the merits of Appellants' arguments against the bond issuance. Moreover, because Appellants were not proper parties in the trial court, they also lack standing under OCGA § 36-82-77 (a) to appeal the trial court's judgment, and this appeal must be dismissed.

4. Appellants seek to avoid this result with a litany of arguments, none of which are persuasive. First, Appellants note that the trial court's order referred to them as "parties," asserting that the court therefore implicitly found them to have standing. But the order said *explicitly* that the court was not deciding the standing issue, and, as discussed above and below, the record would not support such an implicit finding.

Second, Appellants argue that local taxpayers have standing to intervene in bond validation proceedings even if they are not local residents. But even assuming arguendo that taxpayers who are not also State citizens and City residents could have such standing, the record includes no competent evidence that either Appellant was a City taxpayer when the Objection was filed.

Third, the statements-in-place by Appellants' lawyer regarding their residency are not a substitute for admissible evidence in this case, because both the trial court and Appellees did not accept those proffers but rather insisted that Appellants prove their right to intervene with traditional evidence. " 'Attorneys are officers of the

court and a statement to the court in [their] place is prima facie true and needs no further verification *unless the same is required by the court or the opposite party.*' " *Morris v. State,* 228 Ga. 39, 49 (184 SE2d 82) (1971) (citation omitted; emphasis added). Accord *LN West Paces Ferry Assocs., LLC v. McDonald,* 306 Ga. App. 641, 648 n.5 (703 SE2d 85) (2010). See also *Rank v. Rank,* 287 Ga. 147, 149 (695 SE2d 13) (2010) ("*In the absence of an objection,* counsel's evidentiary proffers to the trial court during a hearing will be treated on appeal as the equivalent of evidence." (emphasis added)).

Fourth, the Objection's citizenship and residency allegations might be sufficient to survive a motion to dismiss, see OCGA § 9-11-12 (b), or even, with the addition of Eichler's verification (if that is treated as an affidavit, albeit not one expressly based on personal knowledge), sufficient to defeat a motion for summary judgment, see OCGA § 9-11-56 (e). However, Appellants never put the Objection into evidence at the hearing, and in any event, as the trial court told Appellants' counsel, the statements in their pleading and Eichler's verification could not establish a contested issue of fact *at trial,* where the party with the burden of proof must present admissible evidence such as exhibits with a proper foundation or testimony by witnesses who can be cross-examined by the opposing parties. See *Dozier v. Parker,* 219 Ga. 725, 728 (135 SE2d 857) (1964) ("Neither the petition of the plaintiff, nor the affidavit . . . attached thereto, was offered in evidence by the plaintiff. A petition presents issues, and where denied by the defendant the allegations must be supported by aliunde proof."); *Lester v. Copeland,* 219 Ga. 195, 200 (132 SE2d 190) (1963) ("A party's pleadings are not ordinarily evidence in his favor.").[2]

Fifth, Appellants contend that Appellees' challenge to their standing at the hearing and the motion to dismiss the Objection on that ground were insufficient to refute the allegations of residency in the Objection, because Appellees did not file an answer formally denying those allegations. However, Appellants have pointed to nothing in the Revenue Bond Law or the Civil Practice Act that required Appellees to file an answer to the Objection (which, it should be recalled, was filed just before the hearing started), nor did the trial court order Appellees to do so. Thus, Appellees' failure to file an answer

---

[2] Sherman cites *Rolland v. Martin,* 281 Ga. 190 (637 SE2d 23) (2006), where we said that a " 'verified complaint serves as both pleading and evidence.' " Id. at 191 (citation omitted). But *Rolland* was a habeas corpus case, and a statute expressly provides that in certain habeas corpus proceedings, "[t]he court may receive proof by depositions, oral testimony, sworn affidavits, or other evidence. . . ." OCGA § 9-14-48 (a). The statute governing bond validation hearings contains no similar provision.

cannot be construed as a binding admission that Appellants were Georgia citizens and Atlanta residents when the Objection was filed.

Sixth, Appellants argue that the trial court should have taken, and this Court should now take, judicial notice of findings and statements in other cases indicating that Sherman is a City resident. However, courts are not required to take judicial notice of this sort of fact, and the procedures for taking judicial notice were not invoked. See former OCGA § 24-1-4 (old Evidence Code provision setting forth matters that were required to be judicially noticed); *Fitzpatrick v. Harrison*, 300 Ga. App. 672, 673 & n.1 (686 SE2d 322) (2009). Compare OCGA § 24-2-201 (c)-(d) (new Evidence Code provision governing judicial notice of adjudicative facts). Moreover, standing is determined as of the date the plaintiff initiates the lawsuit, see *Perdue v. Lake*, 282 Ga. 348, 348 (647 SE2d 6) (2007), and a person can change his residency at any time simply by moving to a new address with the intent to remain there permanently or indefinitely. See, e.g., *Rymuza v. Rymuza*, 292 Ga. 98, 102 (734 SE2d 384) (2012) (explaining that residency exists where the person is "present . . . with the intent to remain there indefinitely"); OCGA § 19-2-1. Because residency is not a static fact, a finding in another case that Sherman was a City resident would not demand a finding that he was a City resident on May 8, 2012, when he filed the Objection. He might have moved.

Finally, we reject Appellants' judicial estoppel argument. In a dismissed appeal in the separate, non-bond validation case that we ultimately decided in *Sherman I*, Sherman filed an emergency motion seeking to prevent the commencement of the bond validation proceeding in this case. The City filed a response arguing that the motion should be denied because, if the City ultimately decided to initiate such a proceeding, Sherman would have an adequate remedy at law because he could intervene in the bond validation proceeding. That statement is not cause for us to exercise our discretion to apply judicial estoppel, which is designed to protect the integrity of the judicial process by prohibiting parties from playing " 'fast and loose' " with the courts. *CSX Transp., Inc. v. Howell*, 296 Ga. App. 583, 587 (675 SE2d 306) (2009) (citation omitted). Sherman *could* intervene in this bond validation proceeding — but he had to do so in the proper way, following the basic procedures and proving the minimal facts that are required to become a party. See *Sherman v. Dev. Auth. of Fulton County* ("*Sherman II*"), 321 Ga. App. 550 (739 SE2d 457) (2013) (whole court).[3]

---

[3] In their arguments to this Court, Appellants have not relied on the Civil Practice Act's general intervention statute, see OCGA § 9-11-24, and indeed they expressly disclaimed

5. It may well be that John S. Sherman and Christopher D. Eichler were citizens of Georgia and residents of Atlanta when they filed their Objection in this bond validation proceeding on May 8, 2012. But in our adversary system of justice, litigants cannot establish facts that the opposing party disputes by simply asserting those facts or claiming that everyone knows them to be true. See *Thompson v. Brown*, 288 Ga. 855, 857 (708 SE2d 270) (2011) (explaining that even though the jurors, judge, counsel, and parties all may have known from their daily lives that the part of Vidalia in question was in Toombs County, venue in that county was not properly proved where that fact was not established by the trial record). When facts are disputed, the litigant with the burden of proof must prove them with competent evidence.

Appellants might have proven their citizenship and residency in any number of ways, either at the May 8 hearing or after a continuance, which the trial court mentioned as a possibility but Appellants' counsel did not pursue. Instead, their counsel elected to stand on legal arguments that turned out to have no legs. We note that this was not the first time that Sherman, advised by Woodham, chose to deny that there was a defect in his effort to intervene in a bond validation proceeding, rather than take the simple steps necessary to correct the defect. See *Sherman II*, 321 Ga. App. at 555, n.8. In the end, civil litigants must bear the consequences of their litigation decisions.

For the reasons discussed above, Appellants failed to prove their standing under OCGA § 36-82-77 (a) to become parties in this bond validation proceeding, and they therefore also lack standing to appeal the judgment in that proceeding. Their appeal must therefore be dismissed.[4]

*Appeal dismissed. All the Justices concur.*

---

reliance on that statute in the Objection. Accordingly, we do not address OCGA § 9-11-24, except to note that, had Appellants focused the trial court on OCGA § 9-11-24, their Objection presumably could have been struck for the reason discussed in *Sherman II*. See 321 Ga. App. at 554 (holding that a bond validation proceeding is a "special statutory proceeding" under the Civil Practice Act, see OCGA § 9-11-81, and that the trial court therefore properly struck Sherman's pleadings seeking to become a party to a different bond validation proceeding because he failed to follow the procedures for intervention in a civil action set forth in OCGA § 9-11-24 (c)).

[4] While we do not reach the merits of this appeal, we note that we recently rejected the principal arguments Appellants make here in another case that Sherman had standing to bring and appeal. See *Sherman I*, 293 Ga. at 273, n.6. We also note that Appellants have explained that they sought to intervene in and appeal this case in an effort to prevent *Sherman I* from being rendered moot by a final order validating the Perry-Bolton TAD bonds. They succeeded in that endeavor — although they failed to prevail in *Sherman I*.

DECIDED JUNE 17, 2013.

*Hurt, Stolz & Cromwell, Irwin W. Stolz, Jr., Robert D. Feagin, John F. Woodham*, for appellants.
*Paul L. Howard, Jr., District Attorney, Jerolyn W. Ferrari, Robert D. Ware, Assistant District Attorneys, Kutak Rock, Elizabeth L. Fite, Brian F. Hansen, Holland & Knight, Paul E. Vranicar, Charles S. Johnson III, Brinson, Askew, Berry, Seigler, Richardson & Davis, Norman S. Fletcher, Lemuel H. Ward*, for appellees.